**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

─────────────────────────────

**JENNELL L.,**

                              **Plaintiff,**                              **20-CV-1803Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

─────────────────────────────

## <u>DECISION AND ORDER</u>

As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all proceedings

in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #13.

## BACKGROUND

Plaintiff applied for disability insurance benefits with the Social Security

Administration ("SSA"), on October 20, 2017, alleging disability beginning November 1,

2016, at the age of 36, due to bipolar disorder, anxiety and depression. Dkt. #8, p.100.

On August 2, 2019, plaintiff appeared by video with counsel and testified,

along with an impartial vocational expert ("VE"), Brianne Lott, at an administrative

hearing before Administrative Law Judge ("ALJ"), Paul Georger. Dkt. #8, pp.48-97.

Plaintiff testified that she lives with her mother. Dkt. #8, p.54. She has a valid driver's license and does drive. Dkt. #8, p.54. She completed a couple of years of college and holds a certificate to practice as a licensed practical nurse, but would need to be compliant with treatment and pay a fine in order to work as an LPN again. Dkt. #8, pp.55-56. Plaintiff testified that she was injured in a car accident in 2001 and was over-prescribed opioids. Dkt. #8, p.61 & 78. Plaintiff was fired from a waitress job on November 1, 2016 because her bipolar symptoms were out of control and she wasn't sleeping, causing her to be late and unable to concentrate at work. Dkt. #8, pp.60-61. She explained that she didn't understand why she was doing all these crazy things at the time, stating, "it was scary." Dkt. #8, p.81. She sleeps about 3-4 hours per night and naps 2-3 hours per day approximately twice per day. Dkt. #8, pp.63-64. She attended inpatient substance abuse treatment at Horizon Village, but left the program to be able to self-medicate. Dkt. #8, pp.79-80.

Plaintiff is in a methadone program, but was not currently taking psychotropic medication because Horizon would no longer see her after she transferred to the methadone clinic at Pathways and she had only recently been seen by a new psychiatrist at BestSelf. Dkt. #8, p.64-65. When she was at Horizon, she was seeing her psychiatrist monthly and her counselor weekly, and was also attending group therapy three times per week. Dkt. #8, pp.67-68. At Pathways, she sees her counselor weekly. Dkt. #8, p.68. Plaintiff testified that she had not used opiates since August of 2018 and that the methadone was helping with both her pain and opiate addiction. Dkt. #8, p.65. She attends meeting with Alcoholics Anonymous and Narcotics Anonymous

sometimes and follows numerous Facebook groups focusing on addiction and recovery support. Dkt. #8, p.80.

Plaintiff has sought treatment at Erie County Medical Center's ("ECMC's"), Comprehensive Psychiatric Emergency Program ("CPEP"), for manic episodes, but has not been admitted. Dkt. #8, p.68. Plaintiff testified that she is currently in a low spot with her bipolar disorder, explaining that she felt really bad about herself and was crying and lying in bed a lot, unable to leave the house. Dkt. #8, p.74. She hadn't used makeup in months because she didn't have the energy and didn't really care anymore. Dkt. #8, pp.71-72. She testified that her house is a mess; it is a struggle to do a load of laundry; and her mother does the grocery shopping. Dkt. #8, pp.72-73. Plaintiff's dog is with her ex-boyfriend because she can't take care of the dog. Dkt. #8, p.72. Plaintiff expressed difficulty with her short and long-term memory, maintaining concentration and attention, making decisions, relating to other people, and being with more than 5-10 people. Dkt. #8, p.69. She experiences panic attacks once or twice a day. Dkt. #8, p.71. She cannot concentrate on television, but spends about 15 hours a day on her phone. Dkt. #8, pp.69-70.

The VE classified plaintiff's past work as a waitress, an unskilled, light exertion position, and LPN, a skilled, medium exertion position. Dkt. #8, p.87. When asked to assume an individual with plaintiff's age, education and past work experience with no exertional limits who was limited to simple, routine and repetitive tasks requiring simple work-related decisions with no more than occasional interaction with

supervisors, coworkers and the general public, the VE testified that plaintiff could not

perform her past work but could work as a first aid attendant, which is a skilled, light

exertion position; medical records clerk, which is a semi-skilled, light exertion position;

or work-ticket distributor, housekeeper or cashier, which are unskilled, light exertion

positions. Dkt. #8, pp.88-90.

The ALJ rendered a decision that plaintiff was not disabled on October 29,

2019. Dkt. #8, pp.30-43. The Appeals Council denied review on October 9, 2020. Dkt.

#8, p.5. Plaintiff commenced this action seeking review of the Commissioner's final

decision on December 8, 2020. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to

determining whether the SSA's conclusions were supported by substantial evidence in

the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d

145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*,

569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one

rational interpretation, the Commissioner's determination must be upheld. *McIntyre v.

Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on

adequate findings sustained by evidence having rational probative force, the court

should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145

F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful

activity since the alleged onset date of November 1, 2016; (2) plaintiff's bipolar disorder, alcohol use disorder, and opioid use disorder constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform work at all exertional levels with the following limitations: simple, routine and repetitive tasks, simple work-related decisions, occasional changes in work setting and occasional interaction with supervisors, coworkers and the public; and (5) plaintiff was not capable of performing her past work as a waitress or LPN, but was capable of working as a work-ticket distributor, housekeeper and cashier, each of which were unskilled, light exertion positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #8, pp.30-43.

Plaintiff argues that it was error for the ALJ to determine plaintiff's mental RFC without any medical opinion evidence in the record. Dkt. #10-1, pp.12-16. Plaintiff notes that the state agency review occurred before most of plaintiff's medical records were received and argues that the ALJ rendered his decision based upon his own review of the medical records, which is improper. Dkt. #10-1, p.12.

The Commissioner responds that the ALJ's decision should not be overturned simply because there was no medical opinion evidence in the record. Dkt. #11-1, p.2. The Commissioner argues that nothing in the Act, regulations or rulings requires the ALJ to obtain or rely on a medical source opinion in assessing RFC. Dkt. #11-1, p.2. The Commissioner argues that the ALJ's RFC, which is based upon the opinion of the state agency reviewing medical consultant and almost 700 pages of

medical records, is supported by substantial evidence. Dkt. #11-1, pp. 10-11.

On January 18, 2018, K. Lieber-Diaz, Psy.D., reviewed ECMC progress notes from December of 2017 stating plaintiff's bipolar, alcohol abuse and substance abuse diagnoses and indicating that plaintiff was doing well on Suboxone treatment and was attending groups and individual therapy and describing a mental status examination within normal limits, but noted that plaintiff had not provided an update as to her activities of daily living. Dkt. #8, pp.104 & 432-437. Dr. Lieber-Diaz opined that there was insufficient evidence to assess plaintiff's function and determine plaintiff's claim. Dkt. #8, p.104.

The ALJ relied upon plaintiff's testimony and his detailed narrative review of plaintiff's medical records received subsequent to the state agency review to determine that plaintiff had no more than a moderate limitation in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. Dkt. #8, pp.34-35. Upon consideration of the objective medical evidence, the ALJ determined that plaintiff's alleged daily activities were not entirely consistent with her allegations of disabling mental symptoms and limitations, noting that plaintiff was able to maintain her hygiene, employ coping skills, use a smart phone or computer and maintain a license to operate motor vehicles. Dkt. #8, p.37. The ALJ noted that "[t]he record does not contain any opinions from treating or examining physicians that identify any objective medical findings to support a conclusion indicating that the [plaintiff] was disabled or has

limitations greater than those determined in this decision." Dkt. #8, p.40. The ALJ then concluded that plaintiff's "overall report of daily activities during the period, including her own admission that she is doing well when compliant with treatment, attending her group and individual therapy sessions and avoiding substances, do not support a finding that the [plaintiff] is more limited than as assessed." Dkt.#8, p.40.

Remand is not always required when an ALJ fails in his duty to request medical source statements, especially where the record contains sufficient evidence from which an ALJ can assess the plaintiff's RFC. *Tankisi v. Comm'r of Soc. Sec*., 521 Fed. App'x 29, 34 (2d Cir. 2013). In most cases, however, "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Ortiz v. Colvin*, 298 F. Supp.3d 581, 586 (W.D.N.Y. 2018). A medical source opinion is particularly important where, as here, mental health issues are involved: the leeway afforded ALJ's to make common sense judgments does not typically extend to the assessment of mental limitations, which are by their nature highly complex and individualized. *Ciara B. v. Comm'r of Soc. Sec*., 610 F. Supp.3d 515, 522 (W.D.N.Y. 2022). If the ALJ concludes that a plaintiff's mental impairment is significant enough to constitute a severe impairment, his subsequent failure to obtain a medical assessment of the extent of that impairment from either a treating or consulting examiner quantifying plaintiff's mental limitations generally renders the record incomplete. *Jones v. Colvin*, 14-CV-556, 2015 WL 5126151, *4-5 (W.D.N.Y. Sept. 1, 2015) (remanding where state agency review psychologist indicated that there was

insufficient evidence to review plaintiff's claim). As a general rule, therefore, where the record of evidence "contains only diagnostic evidence and no opinion from a medical source about functional limitations, to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *John L. v. Comm'r of Soc. Sec.*, 20-CV-925, 2021 WL 9629025, *4 (W.D.N.Y. Sept, 3, 2021) (internal quotation omitted).

In the instant case, the ALJ went far beyond a common sense assessment of the functional limitations caused by plaintiff's severe impairments. In the absence of a medical source opinion, the ALJ interpreted treatment notes containing observations of significant manic, depressive and anxious symptoms during the course of multiple attempts at inpatient rehabilitation, supportive housing environments, and outpatient treatment programs. For example, plaintiff presented to Horizon's Rehabilitation Clinic on August 16, 2018, "with symptoms of mania as evidenced by rate and tone of speech and physical restlessness throughout session." Dkt. #8, p.493. In another example, on April 16, 2019, Pathways Medication Assisted Treatment noted, *inter alia*, significantly sad or flat affect; preoccupation with death; poor concentration and marked indecision; intense feeling of hopelessness; and inability to fulfill daily responsibilities and tasks which suggested the need for a more restrictive environment for care. Dkt. #9, pp.725-726. Evaluating the interplay between plaintiff's co-occurring mental health and substance use disorders and assessing their impact upon plaintiff's functional capacity required medical judgment beyond the ken of an ALJ. *See Latta v. Comm'r of Soc. Sec.*, 2020 WL 4904948, at *5 (W.D.N.Y. Aug. 20, 2020) (remanding

where ALJ determined plaintiff's impairments would not be disabling absent alcohol abuse because evidence in the record suggested that plaintiff's mental health disorders were intertwined with her substance abuse).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #10), is granted and the matter is remanded for further proceedings and the Commissioner's motion for judgment on the pleadings (Dkt. #11), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**      **Buffalo, New York**
                **March 30, 2023**

                                        **  s/ H. Kenneth Schroeer, Jr.  **
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**

-10-